AO 106 (Rev. 04/10) Application for a Search Warrant



FILED

MAY 1 6 2018

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                              DEPUTY

# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

Apple iPhone Model A1549 Cell Phone
IMEI No. 359229063668869

) Case No. **18MJ2553**
)
)
)
)
)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
as described in Attachment A.

located in the **Southern** District of **California**, there is now concealed *(identify the person or describe the property to be seized):*
as described in Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 952 & 960 | Importation of a Controlled Substance |

The application is based on these facts:
as described in the attached Affidavit.

☐ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Jason Tanzi, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 5/16/18

City and state: San Diego, California

U.S. Magistrate Judge Karen S. Crawford
*Printed name and title*

## AFFIDAVIT

I, Jason Tanzi, being duly sworn, hereby state as follows:

### INTRODUCTION

1. This affidavit supports an application for a warrant to search the following electronic device (**Target Device**):

   a. Apple iPhone Model A1549 Cell Phone
   IMEI No. 359229063668869
   (**Target Device**);

as described in Attachment A, and seize evidence of crimes, specifically, violations of Title 21, United States Code, Section(s) 952, 960, and 963. This search supports an investigation and prosecution of Noel BRAMBILA Garcia for the crimes mentioned above. A factual explanation supporting probable case follows.

2. The **Target Device** was seized on March 1, 2018 pursuant to an arrest of BRAMBILA at the Otay Mesa, California Port of Entry for illegally importing approximately 24.36 kilograms (53.70 pounds) of methamphetamine in the vehicle he was driving. The **Target Device** was found under the vehicle's front seat. The **Target Device** is currently stored at the Customs and Border Protection Evidence Vault, 9777 Via De La Amistad San Diego, CA 92154.

3. Based on the information below, there is probable cause to believe that a search of the **Target Device** will produce evidence of the aforementioned crimes, as described in Attachment B.

4. The information contained in this affidavit is based my experience and training, consultation with other federal, state, and local law enforcement agents. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all of the information known by me or other federal agents regarding this

1

investigation, but only contains those facts believed to be necessary to establish probable cause.

## EXPERIENCE AND TRAINING

5. I am a Special Agent for the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations (HSI). I have been employed as a special agent since June 2016. Prior to becoming a Special Agent with HSI, I worked as a Federal Air Marshal for approximately 14 years. In addition to participating in operational missions as a Federal Air Marshal, I served as a first-line supervisor and second-line manager to include assignments as an Assistant Supervisory Air Marshal in Charge (ASAC) in the Office of the Director and the Mission Operations Center. Previous employment also includes approximately two years as a Border Patrol Agent and four years as a Law Enforcement Officer in the United States Air Force, Security Police. I have an Associate of Applied Science degree in Criminal Justice from the Community College of the Air Force, as well as a Bachelor of Science degree in Criminal Justice Administration and Master of Business Administration degree from the University of Phoenix.

6. During my tenure with HSI, I have participated in the investigation of numerous narcotics smuggling organizations, which have resulted in the issuance of search warrants, arrest warrants, and the indictments of persons for such crimes. In the course of my duties, I investigate and prepare for prosecution cases against individuals suspected of bringing in and transporting narcotics into the United States with the intent to distribute; and individuals suspected of transporting bulk cash derived from narcotics proceeds out of the United States.

7. By virtue of my employment with HSI, I have performed various tasks, which include, but are not limited to: functioning as a case agent, or co-case agent for investigations of narcotics smuggling organizations; functioning as a surveillance agent and thereby observing and recording the movements of persons suspected of narcotics

smuggling; interviewing suspects, witnesses, and cooperating individuals with specific knowledge relevant to narcotics trafficking.

8. In preparing this Affidavit, I have conferred with other law enforcement personnel who are experienced in the areas of narcotics smuggling investigations. Further, I have personal knowledge of the facts, or have had them related to me by other law enforcement personnel, I submit the following:

   a. Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages.

   b. Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

   c. Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

   d. Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

   e. Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

   f. Drug smugglers and their co-conspirators often use cellular telephones to communicate with load drivers who transport their narcotics and/or drug proceeds.

## FACTS SUPPORTING PROBABLE CAUSE

### Investigation Overview

9. On March 1, 2018, at approximately 1:34 a.m., defendant Noel BRAMBILA-Garcia ("BRAMBILA"), a citizen and native of Mexico, applied for permission to enter the United States from Mexico through the Otay Mesa, California, Port of Entry in vehicle lane #6. BRAMBILA was the driver and sole occupant of a 2007 Dodge Charger bearing California license plates.

3

10. A Customs and Border Protection Officer ("CBPO") conducted a primary inspection of BRAMBILA. BRAMBILA told the CBPO that his intended destination within the United States was Spring Valley and he gave two negative customs declarations. During the primary inspection, a CBPO searched the vehicle with the assistance of a Narcotics Detection Dog. The Narcotics Detection Dog alerted to the passenger side, rear door area of the vehicle. The Primary CBPO then referred BRAMBILA and the vehicle to secondary for further inspection.

11. At approximately 1:36 a.m., a CBPO conducted an inspection of the vehicle using the Z-Portal x-ray machine. The Z-Portal images revealed anomalies in the vehicle's rear doors and quarter panels.

12. During further inspection of the vehicle in the secondary area, a CBPO accessed the rear doors and quarter panels, and found forty-eight (48) packages hidden within the vehicle. The CBPO probed the packages, which contained a substance that field-tested positive for properties of Methamphetamine. The combined weight of the packages was approximately 24.36 kilograms (53.70 pounds).

13. The **Target Device** was in the vehicle's passenger compartment with BRAMBILA and under his sole possession and control when he attempted to cross into the United States from Mexico. Based on my training and experience, it is common for narcotics smugglers to communicate with other members of the drug trafficking organization via cellular phone during transit. The reason for such communication is to coordinate the efforts to get the smuggled narcotics to its intended destination within the United States. Furthermore, smuggling organizations often take deliberate and calculated steps to ensure success of their smuggling venture. To do so requires elaborate planning and coordination. This often requires, in many cases, weeks and even months of planning. Based upon my training, education, experience, and consultation with other law enforcement officers, I believe that probable cause exists to believe BRAMBILA and his co-conspirators engaged in such deliberate planning in the weeks before his arrest.

## METHODOLOGY

14. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

15. Following the issuance of this warrant, I will collect the subject cellular telephone and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

16. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques,

5

including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

17. Based on all of the facts and circumstances described above, including the Defendant being the sole occupant and the location of the 24.36 kilograms of methamphetamine, there is probable cause to conclude that Noel BRAMBILA Garcia used the **Target Device(s)** to facilitate the offenses of Transportation of Controlled Substances. Because the **Target Device** was promptly seized during the investigation of Noel BRAMBILA Garcia smuggling activities and has been securely stored, there is probable cause to believe that evidence of illegal activities committed continues to exist on the **Target Device**. As stated above, I believe that the date range for this search is from February 1, 2018 up to and including March 1, 2018.

18. WHEREFORE, I request that the court issue a warrant authorizing law enforcement agents and/or other federal and state law enforcement officers to search the items described in Attachment A, and the seizure of items listed in Attachment B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.

JASON TANZI
Special Agent

Subscribed and sworn to before me this 16TH day of May, 2018.

The Honorable Karen S. Crawford
United States Magistrate Judge

## **ATTACHMENT A**

PROPERTY TO BE SEARCHED

The following property is to be searched:

>Apple iPhone Model A1549 Cell Phone
>IMEI No. 359229063668869
>(**Target Device**);

**Target Device** is currently in the possession of Customs and Border Protection Evidence Vault, 9777 Via De La Amistad San Diego, CA 92154.

## **ATTACHMENT B**

### ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone will be conducted in accordance with the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of February 1, 2018 up to and including March 1, 2018:

  a. tending to identify attempts to transport methamphetamine or some other controlled substance from Mexico to the United States;

  b. tending to identify accounts, facilities, storage devices, and/or services—such as email addresses, IP addresses, and phone numbers—used to facilitate the smuggling of methamphetamine or some other controlled substance from Mexico to the United States;

  c. tending to identify co-conspirators, criminal associates, or others involved in smuggling methamphetamine or some other controlled substance from Mexico to the United States;

  d. tending to identify travel to or presence at locations involved in the smuggling of methamphetamine or some other controlled substance from Mexico to the United States, such as stash houses, load houses, or delivery points;

  e. tending to identify the user of, or persons with control over or access to, the subject telephone; and/or

  f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

**which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.**